# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL L. MILLER,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>Defendant. | 1:09-cv-1257 SKO<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>(Doc. 1) |

**BACKGROUND**

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. 42 U.S.C. § 405(g). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 6, 7.) On April 7, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

## FACTUAL BACKGROUND

Plaintiff was born in 1966, has a GED, and previously worked as a truck driver. (Administrative Record ("AR") 58, 72, 166.) On November 27, 2006, Plaintiff filed an application for DIB, alleging disability beginning on June 13, 2006, due to chronic pain. (AR 13, 141-50, 165.)

### A. Medical Evidence

On January 21, 2007, Johnson Moon, M.D., performed a consultative neurological examination of Plaintiff. (AR 353-58.) Plaintiff reported that he could walk, sit, and stand for only 20 minutes at a time and that he changed positions several times an hour. (AR 354.) Dr. Moon noted a lack of paravertebral muscle spasms, tenderness, crepitus, effusions, deformities, or trigger points. (AR 356.) Plaintiff's straight leg raising test was positive in the lying and sitting positions.[2] (AR 356.) Dr. Moon opined that Plaintiff would most likely be able to sit for less than two hours in an eight-hour day because of his "constant need to fluctuate between the seated and standing position," and it "would be difficult for him to do most tasks, as they would require more time than he has in a single position." (AR 357.) Dr. Moon further opined that Plaintiff could sit for less than six hours in an eight-hour day and could lift 20 pounds occasionally and ten pounds frequently. (AR 357.) Plaintiff could occasionally bend, stoop, and crouch. (AR 358.) Finally, Dr. Moon opined that Plaintiff had no visual, communicative, environmental, or manipulative limitations (except for his left hand). (AR 358.)

On March 12, 2007, I. Ocrant, M.D., a state agency physician, assessed Plaintiff's physical residual functional capacity ("RFC"). (AR 359-66.) Dr. Ocrant opined that Plaintiff could (1) occasionally lift and/or carry up to 20 pounds and frequently up to 10 pounds; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for less than six hours in an eight-hour workday, with periodic alternation between sitting and standing; and (4) perform limited pushing and/or pulling with the upper extremities. (AR 360.) Plaintiff could frequently climb ramps

---

[2] The straight leg raising test is a test done during a physical examination to determine whether a patient with low back pain has an underlying herniated disk. The straight leg raising test is positive if the patient experiences pain down the back of the leg when the leg is raised.

and stairs (and occasionally ladders, ropes, and scaffolds), balance, stoop, kneel, crouch, and crawl. (AR 361.) Plaintiff's reaching was limited, but he had no visual, communicative, or environmental limitations. (AR 361-62.)

On April 13, 2007, James Derbin, M.D., a state agency physician, completed a psychiatric review technique form on which he found that Plaintiff's restriction of activities of daily living was mild, he had mild difficulties in maintaining social functioning, and he had mild difficulties in maintaining concentration, persistence, or pace. Plaintiff had no episodes of decompensation of extended duration. (AR 377.) Dr. Derbin noted that a review of Plaintiff's records revealed only physical diagnoses and that Plaintiff's low-grade anxiety was first recorded in 2003 and again in 2006 "with no evident impairment in functioning noted in the clinical notes." (AR 379.) Because Dr. Derbin found that "there is data to support a low grade chronic anxiety [disorder] of limited severity which does not significantly affect the functioning of [Plaintiff]," Dr. Derbin found that Plaintiff's anxiety disorder was not severe. (AR 379.)

In a letter dated July 6, 2007, Plaintiff's family physician, Mark Tetz, M.D., expressed his opinion that Plaintiff "has been disabled from work since June 12, 2006. He continues to have chronic neck and back pain, and he also has difficulties in terms of concentration and mental functioning as a result of pain and the pain medications he takes to control symptoms." (AR 394.) Dr. Tetz, therefore, opined that Plaintiff "is totally disabled and will be unable to perform any type of work for at least one year." (AR 394.)

On September 23, 2007, Dr. Tetz completed a "multiple impairment questionnaire" on which he assessed Plaintiff's physical ability to do work-related activities. (AR 387-93.) Dr. Tetz opined that Plaintiff could occasionally lift and carry up to 20 pounds, and sit, stand, and walk for a total of less than two hours in an eight-hour workday. (AR 390-91.) Plaintiff's left upper extremity was markedly limited in grasping, manipulating, and reaching. (AR 391-92.) Finally, Plaintiff could not push, pull, kneel, bend, or stoop. (AR 393.)

On that same date, Dr. Tetz again expressed his opinion in a letter that Plaintiff "has been disabled from work since June 12, 2006." (AR 396.) Plaintiff "can only sit for 10 to 15 minutes without getting up for breaks and can only lift 10 to 20 pounds at maximum. . . . I do not feel that he would be able to sit a minimum of six hours per day per eight[-]hour work day and could not stand or walk a minimum of six hours per eight hour work day." (AR 395-96.)

Between April 15 and 22, 2008, Plaintiff was hospitalized because of respiratory failure and delirium due to a drug overdose in an attempt to commit suicide. (AR 17, 458.) On discharge, Plaintiff expressed remorse for the suicide attempt and a willingness to follow up with counseling, and he had "no intention of harming himself." (AR 462.)

**B. Administrative Hearing**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 91-95, 97-103.) On February 10, 2009, ALJ Robert S. Chester held a hearing in which Plaintiff, a vocational expert, and a medical expert testified. (AR 34-70.)

**1. Plaintiff's Testimony**

Plaintiff last worked as a grocery clerk from October 2008 to January 2009 before falling down a flight of stairs and injuring himself. (AR 46-48.) Plaintiff was hospitalized in April 2008 for nine days after attempting suicide. (AR 52-53.) Plaintiff had lost weight because of a loss of appetite due to his depression. (AR 53.) Plaintiff received mental health counseling from his pastor at church, which sometimes helped. (AR 58.) Plaintiff was able to take care of his personal hygiene but did not cook. (AR 60-61.)

Further, in a function report completed on December 18, 2006, as part of his application for DIB, Plaintiff reported that his daily activities in a typical day involved showering and occasionally performing light household chores and errands such as picking up prescriptions or his children from school. (AR 185.) Plaintiff did not have any problems with his personal care. (AR 186.) Plaintiff could dust, load the dishwasher, and vacuum for 30 minutes to an hour every week. (AR 187.) He

could not, however, push a lawnmower because of pain. (AR 188.) Plaintiff went outside four times a week, could drive a car, and shopped for household items and groceries once a week for 45 to 90 minutes at a time. (AR 188.) Plaintiff's social activities included visiting a friend and attending Bible study on a weekly basis, regularly attending church, and fishing. (AR 181, 189.) According to Plaintiff, he could walk 20 to 30 feet before needing to rest for ten to 15 minutes, and he could only pay attention for ten minutes at a time. (AR 190.) Plaintiff could follow written and spoken instructions, and he got along with authority figures. (AR 190-91.) Plaintiff could also handle stress and changes in routine. (AR 191.) Plaintiff claimed to be "irritable more often due to pain and fatigue." (AR 191.)

**2. Medical Expert's Testimony**

A medical expert testified that Plaintiff could lift 20 pounds occasionally and ten pounds frequently, stand and/or walk for two hours in an eight-hour day, and sit for six hours. (AR 16-17, 41-46.)

**3. Vocational Expert's Testimony**

A vocational expert testified that Plaintiff's past work as a truck driver as he performed it was heavy and semi-skilled.[3] (AR 62.) A hypothetical person of the same age, education, and work experience as Plaintiff could not perform Plaintiff's past relevant work as a truck driver if such a person could (1) only lift occasionally 20 pounds and frequently ten pounds, (2) stand or walk for at least two hours in an eight-hour day, (3) sit for about six hours in an eight-hour day, (4) occasionally balance, stoop, kneel, crouch, crawl, and climb stairs and ladders (but never ladders, ropes, or scaffolds), (5) occasionally reach overhead, (6) frequently handle and occasionally finger with his left, non-dominant hand, and (7) never be exposed to unprotected heights and moving mechanical parts and machinery. (AR 63.) Such a person could, however, perform other jobs such as a cashier, ticket seller, production inspector, and packaging and filling machine operator. (AR

---

[3] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, [the Commissioner] determine[s] that he or she can also do medium, light, and sedentary work." 20 C.F.R. § 404.1567(d).

64-65.) A hypothetical person with the limitations set forth in Dr. Moon's January 2007 functional assessment could not perform full-time employment. (AR 65-66, 357.)

**C. ALJ's Decision**

On March 9, 2009, the ALJ issued a decision finding Plaintiff not disabled since June 13, 2006. (AR 10-27.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of June 13, 2006; (2) had an impairment or a combination of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations; (3) did not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) could not perform his past relevant work as a truck driver; and (5) could perform other work in the national economy. (AR 15-27.) The ALJ found that Plaintiff had the RFC to perform light work, except that he could (1) stand or walk for at least two hours in an eight-hour day, (2) occasionally balance, stoop, kneel, crouch, crawl, and climb stairs and ladders (but never ladders, ropes, or scaffolds), (3) occasionally reach overhead, and (4) frequently handle and occasionally finger with his left, non-dominant hand. (AR 20.) Plaintiff would also need to avoid all exposure to unprotected heights and moving mechanical parts and machinery. (AR 20.)

The ALJ further found mild limitations in Plaintiff's activities of daily living, social functioning, and concentration, persistence, or pace, and no episodes of decompensation. (AR 18.) The ALJ, therefore, found that Plaintiff's "medically determinable mental impairments of depression and anxiety[] do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." (AR 18.)

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC]." (AR 23; *see also* AR 20-24.) Specifically, the ALJ found that "[t]he

intensity, persistence and limiting effects of [Plaintiff's] pain complaints are inconsistent with his activities of daily living," further finding the following:

> [Plaintiff] reported performing all personal care activities such as dressing, bathing, shaving, feeding, and toileting without difficulty and reported performing household chores such as vacuuming, dusting, loading the dishwasher and shopping for up to [] 90 minutes at a time. In addition, a typical day included performing showering/personal care, light household chores, running errands, picking up the children from school, and attending appointments. [Plaintiff] also stated he attended church, Bible study, visited with friends and was reported to go fishing on occasion. [Plaintiff] has described, on several occasions, daily activities which are not limited to the extent expected given [Plaintiff's] pain complaints and alleged inability to perform work-like activities.

(AR 23-24.)

Plaintiff sought review of this decision before the Appeals Council. (AR 7-9.) On May 19, 2009, the Appeals Council denied review. (AR 1-4.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

**D. Plaintiff's Contentions on Appeal**

On July 17, 2009, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff contends that the ALJ erred in (1) finding that Plaintiff's mental impairments were not severe and in (2) discounting the opinions of Dr. Tetz, Plaintiff's treating physician, and Dr. Moon, the consultative examining neurologist.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant

has sufficient RFC despite the impairment or various limitations to perform his past work.[4] *Id.* §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

### A. The ALJ's Evaluation of Plaintiff's Impairments

The ALJ found that Plaintiff "has the following severe impairments: degenerative disc disease of the cervical spine[;] status-post surgical fusions; degenerative disc disease of the lumbar spine; meralgia paresthetica[5] of the right lower extremity; amputated left (non-dominant) middle finger; and obesity." (AR 15.) The ALJ found, however, that Plaintiff's "medically determinable mental impairments of depression and anxiety[] do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." (AR 18.) Plaintiff maintains that the ALJ erred in finding that his mental impairments were not severe at the Second Step of the sequential evaluation process.

#### 1. Legal Standard

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

[5] Meralgia paresthetica is pain in the thigh caused by entrapment of the lateral femoral cutaneous nerve at the inguinal ligament, causing paresthesia (abnormal touch sensation), pain, and numbness in the outer surface of the thigh in the region supplied by the nerve. *Dorland's Illustrated Medical Dictionary* 1153, 1404 (31st ed. 2007).

With regard to a determination at the Second Step, "[a]n impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Thus, "'[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Id.* at 687. "Step two . . . is 'a de minimis screening device [used] to dispose of groundless claims,' and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Id.* (citation omitted).

In determining whether a plaintiff's mental impairment is severe, ALJs are to determine the degree of limitation in the following four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. If the degree of limitation in these four areas is determined to be "mild," a claimant's mental impairment is generally not severe, unless there is evidence indicating a more than minimal limitation in his ability to perform basic work activities.[6] *See* 20 C.F.R. § 404.1520a(c)-(d).

**2. Analysis**

As an initial matter, the ALJ discounted Plaintiff's credibility in this case, relying on Plaintiff's reported daily living activities and the objective medical evidence to find that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC]." (AR 23; *see also* AR 20-24.) Plaintiff has not challenged the sufficiency of the evidence supporting the ALJ's adverse credibility finding in this case or the adequacy of the ALJ's reasons given to explain this finding. Therefore, the Court considers the ALJ's unchallenged credibility finding to be binding.

---

[6] Basic work activities include: (1) understanding, carrying out, and remembering simple instructions; (2) responding appropriately to supervision, co-workers, and usual work situations; and (3) dealing with changes in a routine work setting. *See* 20 C.F.R. § 404.1521(b).

In this case, the ALJ found mild limitations in Plaintiff's activities of daily living, social functioning, and concentration, persistence, or pace, and no episodes of decompensation. (AR 18.) In considering Plaintiff's daily living activities, the ALJ found that Plaintiff "has described, on several occasions, daily activities which are not limited to the extent expected given [Plaintiff's] pain complaints and alleged inability to perform work-like activities." (AR 24.) The ALJ noted in particular Plaintiff's reports of performing all personal care activities and household chores, in addition to attending appointments. (AR 24.) Further, as for Plaintiff's social functioning, the ALJ found that, according to Plaintiff, he attended church and Bible study, visited friends, and occasionally went fishing. (AR 24.) As for Plaintiff's limitations in concentration, persistence, or pace, the ALJ noted that Plaintiff related any limitations in concentration to "pain complaints stemming from his physical impairments, not to mental impairments or depressive issues." (AR 18.) Finally, as for the fourth functional area of episodes of decompensation, the ALJ's finding in this regard was as follows:

> [Plaintiff] has experienced no episodes of decompensation which have been of extended duration. Although [Plaintiff] was hospitalized for nine days in April 2008 for an apparent suicide attempt, the length of time in the hospital was for recovery of physical problems associated with the attempt, respiratory failure and delirium, and not for a diagnosed acute or chronic mental impairment. Therefore, such is found to not be an episode of decompensation of extended duration [as] defined in the Social Security Act.

(AR 18.) Therefore, the ALJ concluded that Plaintiff did not have severe mental impairments. *See* 20 C.F.R. § 404.1520a(d)(1). Plaintiff alleges, however, that the ALJ erred at the Second Step in concluding that his mental impairments of depression and anxiety were not severe.

Plaintiff's argument misapprehends the function of the Second Step as a gatekeeping mechanism to dispose of groundless claims. Once a claimant prevails at the Second Step, by achieving a finding of some severe impairment, regardless of which condition is found to be severe, the Commissioner proceeds with the sequential evaluation, considering at each step all other alleged impairments and symptoms that may impact the claimant's ability to work. *See* 42 U.S.C. § 423(d)(2)(B) ("In determining whether an individual's physical or mental impairment or

impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.").

In this case, the ALJ resolved the Second Step in Plaintiff's favor, concluding that Plaintiff had demonstrated several impairments (including meralgia paresthetica and degenerative disc disease of the cervical and lumbar spine) necessary to satisfy the Second Step. (AR 15.) Thus, the question becomes whether the ALJ properly considered the functional limitations of all medically determinable impairments at the remaining steps. *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (recognizing that, if one severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis). The ALJ properly continued the sequential decision-making process until reaching a determination at the Fifth Step.

In any event, even if the ALJ had erred in finding that Plaintiff's mental impairments were not severe, any such error was harmless and did not prejudice Plaintiff at the Second Step, as this step was resolved in Plaintiff's favor. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (any error in omitting obesity from list of severe impairments at step two was harmless because step two was resolved in claimant's favor). Accordingly, the ALJ did not err in concluding that Plaintiff's mental impairments were not severe.

Plaintiff also contends that the ALJ failed to develop the record by seeking additional evidence regarding his mental impairments and that the Court should, therefore, remand this case for a psychological evaluation and RFC assessment from a mental health professional. Before ordering a consultative examination, however, the Commissioner will consider a number of factors, including the existing medical evidence, interview forms, and claimant's allegations. 20 C.F.R. § 404.1519a. The ALJ has broad latitude in ordering a consultative examination. *Reed v. Masanari*, 270 F.3d 838, 842 (9th Cir. 2001). Furthermore, the Commissioner need only seek additional

evidence or clarification from a treating physician when a medical report contains a "conflict" or an "ambiguity" that must be resolved. 20 C.F.R. § 404.1512(e)(1).

Here, there were no conflicts or ambiguity that had to be resolved, nor did the ALJ make such a finding. Therefore, the ALJ's duty to seek additional evidence in order to develop the record was not triggered. *See Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (duty not triggered where ALJ did not make finding that medical report was inadequate to make disability determination); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (only ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry or gather additional information). Thus, the ALJ was not required to obtain any additional information in order to fulfill his duty to fully and fairly develop the record.

**B. The ALJ's Evaluation of the Opinions of Drs. Tetz and Moon**

Relying in part on *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988), Plaintiff contends that the ALJ erred in discounting the opinions of Dr. Tetz, Plaintiff's treating physician, and Dr. Moon, the consultative examining physician.

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Id.* If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by

substantial evidence in the record. *Id.* at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Plaintiff's reliance on *Embrey* is misplaced. In *Embrey*, the court held that an ALJ's determination that sufficient objective findings do not support a treating physician's opinion is not, without more, a sufficiently specific reason to reject that opinion. 849 F.2d at 421-22. In this case, the ALJ found that Dr. Tetz's opinion that Plaintiff was limited to a total of less than two hours sitting, standing, and walking in an eight-hour day and to no use of the left arm was not supported by the doctor's own clinical findings. (AR 24.) In addition, the ALJ found that Dr. Tetz's opinion was not supported by Plaintiff's hearing testimony or reports of his activities of daily living. (AR 24.) The ALJ further found that Dr. Tetz's opinion in July 2007 that Plaintiff was "totally disabled" was not entitled to controlling weight or special significance. (AR 25.) The ALJ, therefore, provided specific, legitimate reasons for discounting Dr. Tetz's opinion in addition to the lack of objective findings. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by record as a whole, or by objective medical findings); *Tonapetyan*, 242 F.3d at 1148 ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability."); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995) (claimant's testimony inconsistent with examining psychologist's opinions was specific, legitimate reason to reject opinions); *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (claimant's daily activities provide relevant basis for rejecting treating physician's testimony). In sum, the ALJ gave specific and legitimate reasons, supported by the record, for discounting Dr. Tetz's opinion.

Plaintiff further contends that the ALJ erred in discounting the opinion of Dr. Moon, the examining neurologist. The ALJ afforded "some weight" to Dr. Moon's medical conclusions, noting that "the medical findings in [Dr. Moon's] consultative examination for purposes of [Plaintiff's] Social Security claim are more limiting than the same findings in other physical examinations leading to the possibility [Plaintiff] was either not exerting full effort or was attempting to manipulate the findings to appear more limited than his actual capacities." (AR 25.) The ALJ pointed to Plaintiff's straight leg raising test upon examination by Dr. Moon that was positive for pain, despite Dr. Moon's finding of a lack of muscle spasms, tenderness, crepitus, effusions, deformities, or trigger points. (AR 25.) Plaintiff apparently maintains that the ALJ improperly discounted Dr. Moon's opinion because it was based on Plaintiff's less than credible complaints of pain on examination.

It is appropriate for an ALJ to consider the absence of supporting findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion. *Johnson v. Shalala*, 60 F.3d 1428, 1432-33 (9th Cir. 1995); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Moreover, "[a] physician's opinion . . . premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Morgan*, 169 F.3d at 602 (internal quotation marks omitted). Because the ALJ discounted Plaintiff's credibility regarding his limitations, the ALJ properly rejected Dr. Moon's findings to the extent they were based on Plaintiff's subjective complaints. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (ALJ properly may discount physician's opinion that is based solely upon claimant's self-reporting if ALJ concludes claimant's self-reporting is not credible); *Tonapetyan*, 242 F.3d at 1149 (medical opinion premised on subjective complaints may be disregarded where record supports ALJ in discounting claimant's credibility); *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (per curiam) (affirming ALJ's rejection of treating physician's opinion based on claimant's self-reports, which ALJ found were not credible); *Fair v.*

*Bowen*, 885 F.2d 597, 605 (9th Cir.1989) (disregarding treating physician's opinion because it was premised on plaintiff's subjective complaints, which the ALJ had already discounted). Plaintiff's lack of credibility was a specific and legitimate reason, supported by the record, for the ALJ to discount Dr. Moon's opinion to the extent that it was based on Plaintiff's subjective complaints. Accordingly, the ALJ's findings are supported by substantial evidence and are legally correct.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Daniel L. Miller.

IT IS SO ORDERED.

**Dated: November 29, 2010** **/s/ Sheila K. Oberto**
UNITED STATES MAGISTRATE JUDGE